IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Case No. 13-cv-00181-MSK

ADDONS, INC.

    Plaintiff,

v.

BELTEK, INC.,
ADVANCED TECHNICAL ELECTRONIC KNOWLEDGE SOLUTIONS, INC., and
ROXANNA BELL,

    Defendants,

and

FIRST STATE BANK,

    Counterclaim/Third Party Plaintiff,

v.

ADDONS, INC.,

    Counterclaim Defendant,

GLENN MAXELL ROGERS,
CHRISTOPHER LONG, and
ALAN SAGE,

    Third-Party Defendants.

---

## OPINION AND ORDER GRANTING MOTION TO REMAND

---

**THIS MATTER** comes before the Court pursuatn to Plaintiff AddOns, Inc.'s

("Addons") Motion to Remand **(# 10)**, Counterclaim/Third-Party Plaintiff First State Bank's

("First State") response **(# 13)**, Defendants Beltek, Inc. ("Beltek"), Advanced Technical

1

Electronic Knowledge Solutions, Inc. ("ATEK"), and Roxanna Bell's response **(# 14)**, and Addons' and Third-Party Defendants' Christopher Long, Glenn Maxwell Rogers, and Allen Sage's reply **(# 15)**.[1]

## FACTS

On July 12, 2010, Addons commenced this action against Beltak, ATEK, and Ms. Bell in the Colorado District Court for Denver County. It alleged that, in 2007, it entered into a contract with Ms. Bell and her late husband, who were acting on behalf of Beltek and ATEK, to purchase certain assets of those companies, most notably, a product called "Syncrhonizer Software" that Beltek and ATEK owned. Addons contends that, despite entering into the contract, the Defendants failed to deliver the "source code" to the Synchronizer Software, making it impossible for Addons to monetize the software in the way it had intended. Moreover, Addons contends that the Defendants falsely represented the extent to which sales of the Synchronizer Software to new customers were "in the pipeline" at the time of the contract; made various false representations to Addons in financial statements and other materials showing Beltek and ATEK's costs and expenses; falsely represented to Addons that an important patent that the Defendants had applied for was about to be granted, when, in fact, they knew that the patent application had already been rejected; and conveyed negative information to a third-party about Addons, causing that third party to discontinue a business relationship with Addons. Based on these allegations, Addons asserted four claims against the Defendants: (i) common-law fraud; (ii) common-law negligent misrepresentation; (iii) breach of contract; and (iv) common-law intentional interference with prospective business advantage.

On August 10, 2010, the Defendants filed an Answer and asserted counterclaims against Addons. Specifically, the Defendants alleged that Addons had defaulted on the payment

---

[1] Also pending is a request for forthwith hearing **(# 11)** on the Motion to Remand. That motion is denied as moot.

schedule set forth in the parties' contract, and thus, asserted counterclaims for breach of contract and a request for an accounting.

There appear to have been extensive proceedings that occurred thereafter in state court, but the record presently before this Court only hints at their scope. In February 2012, Ms. Bell, acting on behalf of herself and for Beltek and ATEK, assigned those parties' interests in the counterclaims against Addons in this case to First State. A jury trial commenced in the state court on May 14, 2012, at which time Addons moved (on unspecified grounds) to dismiss the Defendants' counterclaims. The court found that the Defendants had assigned the claims, such that First State, not the Defendants, was the real party in interest capable of pursing those counterclaims. In light of First State's absence from the litigation, it appears that the state court continued the jury trial. In further orders in May and June 2012, it appears that the state court invited First State to intervene in the suit for purposes of pursuing the counterclaims.

It is not clear what occurred in the interim, but on or about January 23, 2013, First State filed a Complaint In Intervention in the state court proceeding. (Notably, it appears that First State did not formally move to intervene in the suit until February 4, 2013, after this action had been removed.) In addition to asserting the counterclaims for breach of contract and an accounting, First State's Complaint In Intervention further asserted that Addons, along with Third-Party Defendants Rogers, Long, and Sage, fraudulently induced Ms. Bell, Beltek, and ATEK into entering into the contract by concealing Addons' plans to exploit the Synchronizer Software and Beltek and ATEK's customer information in certain adverse ways. First State also asserted a claim for copyright infringement, in violation of 17 U.S.C. § 501, in that Beltek

"repossessed" the Synchronizer Software from Addons in August 2012, yet Addons continued to use the software, thereby infringing upon Beltek's copyrights in the software.[2]

On January 24, 2013, the day after it filed its Complaint In Intervention, First State filed the instant Notice of Removal, alleging that this Court possessed federal subject matter jurisdiction over the action on federal question grounds (by virtue of First State's copyright counter/third-party claim) under 28 U.S.C. § 1454, and on diversity of citizenship grounds under 28 U.S.C. § 1332.

Addons now moves **(# 10)** to remand the action, alleging that First State's removal was improper.

## **ANALYSIS**

Normally, only defendants are permitted to remove actions to federal courts, and only on the strength of the claims asserted by the plaintiff, not due to any counterclaims the defendant might assert. *See e.g. Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826, 830 (2002). Moreover, the action must be removed within 30 days of the removing party becoming aware of the grounds for such removal. 28 U.S.C. § 1446(b). However, 28 U.S.C. § 1454 provides for an exception to that rule in cases involving (among other things) claims of copyright infringement. In such cases where "any party asserts a claim for relief" sounding in copyright, the action "may be removed by any party" and the time limitations on such removal "may be extended" by the court "for cause shown." 28 U.S.C. § 1454(a), (b).

Although First State invokes the special removal rules governing copyright actions as supporting its removal of this case, the Court finds that the record herein is insufficient to permit

---

[2] The Notice of Removal states that, after assigning her (and Beltek and ATEK's) claims against Addons to First State, Ms. Bell and First State later modified that assignment to give First State a 70% interest in those claims, with Ms. Bell retaining a 30% interest in the claims. The record does not reflect, however, that Ms. Bell has joined in First State's counter- or third-party claims.

the conclusion that this case fits within section 1454. Specifically, this Court finds that nothing in the record indicates that, as of this time, First State's participation in this action has yet to be approved.

The current record before this Court indicates only that: (i) the state court "invited"[3] First State to intervene in this action in May 2012; (ii) First State filed a Complaint In Intervention more than six months later, without first seeking a formal order permitting it to intervene; and (iii) First State's formal request for permission to intervene was not filed in the state case until February 4, 2013, <u>after</u> it had already effected the purported removal of this action (and thus, after the state court had been divested of any jurisdiction to even consider the motion, 28 U.S.C. § 1446(d)). Thus, at this stage, the record reflects that First State's Complaint In Intervention is nothing more than a putative pleading – an indication of the counter- and third-party claims that First State <u>would</u> assert if the court with appropriate jurisdiction grants it leave to do so. Because the Complaint In Intervention is simply hypothetical at this stage, its equally hypothetical copyright claim is thus insufficient to confer federal subject-matter jurisdiction upon this Court.

First State argues that, "in view of the state court's oral order" directing[4] it to intervene – an order which is nowhere to be found in the instant record -- a motion to intervene is "a mere formality." The Court does not share First State's casual regard for such matters. A lawsuit is

---

[3] "Invited" is the word chosen by First State in its February 4, 2013 Motion to Intervene. *Docket #* 15, Ex. G. First State's Notice of Removal uses the word "ordered." However, notwithstanding the requirement that First State's Notice of Removal include copies of all orders served by the state court upon First State, 28 U.S.C. § 1446(a), nothing in the record reflects a specific order by the state court granting First State leave to intervene. The only copy of any state court order in the record in this case is the test of the May 14, 2012 Minute Order that says nothing about First State's intervention. First State makes reference to certain transcripts of the state court proceedings in its response, but it has not supplied the Court with copies of those transcripts, nor quoted any language from the state court that unambiguously grants First State leave to intervene.

[4] The record unambiguously reflects that even First State did not understand itself to be under a command of the state court to immediately intervene. Despite being aware of the alleged state court "order" to intervene by June 2012, First State considered that it "might have other options to review and pursue" in lieu of intervention, and further concluded that "it needed to pursue further discovery," extending into December 2012, "in order to review and confirm its options" as to whether it would seek to intervene. Thus, First State's own behavior indicates that it did not understand the state court to have affirmatively "ordered" it to intervene.

5

not a cocktail party, where a mere desire to participate, or even an "invitation" to do so, is sufficient of itself to get in.  Both C.R.C.P. 24(c) and Fed. R. Civ. P. 24(c) both contemplate that a party seeking to intervene "shall serve a motion to intervene upon the parties" in the action, regardless of whether the intervention sought is permissive or "as of right."  By extension, if intervention must be sought via motion, it must be granted by the Court before it becomes effective.  Thus, in the absence of an order from either the state court (which lacked the jurisdiction to grant First State's post-removal motion to intervene) or this Court (in which no motion to intervene has been filed) granting First State the right to participate in this action, First State's removal is improper.

Contrary to First State's suggestion, the court's approval of a request to intervene is no "mere formality."  Even where a movant seeks intervention "as of right" under either C.R.C.P. 24(a) or Fed. R. Civ. P. 24(a), the court still has authority to deny such intervention upon a finding (among other things) that the request is not "timely."  *N.A.A.C.P. v. State of New York*, 413 U.S. 345, 365 (1973).  Timeliness is to be evaluated from all of the relevant circumstances, but one important factor is "the point to which the suit has progressed."  *Id.* at 365-66.  Here, the record indicates that the case was at an advanced stage in May 2012 – indeed, the state court's minutes indicate that a jury trial had commenced on that day.  The matter certainly became even more advanced over the more than six month period during which First State failed to seek intervention, and the parties represent that, as of the moment First State removed this action, the matter was set for another jury trial to commence on February 25, 2013.  Thus, this Court has grave doubts that First State's motion to intervene would be considered "timely" by whatever court would be called upon to make such an adjudication.

The untimeliness of First State's request to intervene is further sharpened by examination of the counter- and third-party claims it seeks to assert. The Court notes that First State has no inherent interest in such claims; its interest arises by virtue of an assignment and thus is entirely derivative of Ms. Bell, Beltek, and ATEK's interests. As to the two counterclaims first asserted by Ms. Bell, Beltek, and ATEK, the record reflects that First State originally held a complete interest in such counterclaims, but thereafter re-conveyed a 30% interest in those claims back to the Defendants. Because the Defendants remain party to this action, and capable of asserting their own interest in those counterclaims, the Court has some doubt that First State has any particular right to intervene to assert such counterclaims. *See* C.R.C.P. 24(a), Fed. R. Civ. P. 24(a) (intervention as of right not available where "existing parties adequately represent [the] interest" claimed by the movant).

As to the "new" counter- and third-party claims First State intends to assert – the fraudulent inducement and copyright claims – the Court has some doubt that any "invitation" by the state court to First State to intervene specifically contemplated that First State would expand an already mature litigation by asserting heretofore unpled counterclaims.[5] Given the age of this case and the last-minute introduction of the new claims, it may very well be that the state court would only grant First State leave to intervene to assert its interest in the existing counterclaims, and require it to pursue the new claims in a separate action. (Certainly, were this Court to entertain jurisdiction over the action, it would do so.)

Accordingly, this Court finds that First State has failed to demonstrate that it has even been formally joined in this action, much less that it has the authority to effectuate the removal of

---

[5] Because the Defendants apparently retain their 30% interest in these "new" counter- and third-party claims, the Court also has some doubt as to whether First State can pursue the claims without joining the Defendants as additional counter- or third-party plaintiffs. There is no indication to date that Ms. Bell, Beltek, or ATEK intend to assert the same fraudulent inducement or copyright claims that First State does.

7

the action on the strength of a copyright counterclaim.  Because this Court lacks jurisdiction over the action on the face of the current record, the matter is remanded to the Colorado District Court for Denver County for further proceedings pursuant to 28 U.S.C. § 1447(c).  Moreover, because it appears to this Court that First State had neither obtained nor even sought leave of the state court to intervene at the time it effected the improper removal, the Court finds it appropriate under 28 U.S.C. § 1447(c) to require First State to bear Addons' costs and attorney's fees incurred in seeking remand.  Addons shall file an appropriate motion supporting any claim for such fees within 14 days of this Order, and First State shall respond within 7 days of Addons' motion.  No reply shall be permitted.

## CONCLUSION

For the foregoing reasons, Addons' Motion to Remand **(# 10)** is **GRANTED**.  The Clerk of the Court shall promptly transmit the entirety of this case's file to the Clerk of the Colorado District Court for Denver County.  The parties Motion for Forthwith Hearing **(# 11)** is **DENIED AS MOOT**.  Pursuant to 28 U.S.C. § 1447(c), Addons shall be entitled to recovery of its costs and reasonable attorney's fees from First State, upon motion made within 14 days of this Order.

Dated this 6th day of February, 2013.

        **BY THE COURT:**

*Marcia S. Krieger*
_____
Marcia S. Krieger
Chief United States District Judge